## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **THE KROGER CO.,** | : | Case No. |
| Plaintiff, | : | Judge |
| v. | : | |
| **MEDALLION TRANSPORT & LOGISTICS, LLC,** | : | **VERIFIED COMPLAINT** |
| Defendant. | : | |

For its Verified Complaint against Defendant Medallion Transport & Logistics, LLC ("Medallion"), Plaintiff The Kroger Co. ("Kroger") states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Kroger is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

2. Upon information and belief, Medallion is a North Carolina limited liability company with its principal place of business in Tipton, Indiana.

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332, and other applicable laws.

4. This Court has personal jurisdiction over the parties pursuant to the parties' contract that is the subject of this action.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3) and other applicable laws.

1

## FACTS

### The Parties

6. Kroger is a major food and drug retailer that operates over 1,000 grocery stores across the United States.

7. Medallion is a freight broker that contracts with carriers to offer transportation services to its customers.

### The Agreement

8. On December 12, 2019, Kroger and Medallion entered a Non-Dedicated Contract Carrier Transportation Agreement (the "Agreement"), wherein Medallion agreed to provide its brokerage services to Kroger for the transportation of groceries and other consumer packaged goods to Kroger's various locations. A true and accurate copy of the Agreement is attached as **Exhibit A**.

9. The Agreement incorporated Kroger's standard operating procedures ("SOP") for Medallion's services, which are outlined in the Kroger Freight Billing Instructions, a true and accurate copy of which is attached as **Exhibit B**.

10. Under the SOP, Medallion would quote a freight price to Kroger to haul a particular load, which Kroger could accept or reject. If it accepted Medallion's offer, Kroger would then pay Medallion its quoted price, regardless of Medallion's ultimate "linehaul cost" (i.e. the cost of dock-to-dock transport) to have the load hauled by a carrier.

11. In addition to linehaul costs, carriers incur certain fees and charges called "accessorials" in connection with hauling a load. In addition to the freight price, Kroger would pay Medallion for accessorial charges, provided Medallion submitted the proper documentation supporting the charges. Unlike the freight price, however, which is a fixed price that is agreed

upon up front and not subject to change, accessorial fees may vary from load to load depending on the actual accessorial charges incurred by the carrier.

12. Under the Agreement, the parties generally agreed to resolve all disputes related to the Agreement through arbitration. However, Section 12.5 of the Agreement provided an exception to this rule: "[i]n cases where the alleged damages equal or exceed three million dollars (exclusive of interest and costs) either party may opt out of the requirement to arbitrate the dispute and proceed with the action in the U.S. Federal District Court in Cincinnati, Hamilton County, Ohio."

### Misconduct Uncovered

13. John Palmer, a former Supervisor of Logistics Operations for Kroger, acted as Kroger's primary point of contact for Medallion.

14. In late May 2023, Kroger's accounting department identified an unusually large payment request for $1.5 million submitted by Medallion and approved by Palmer.

15. When asked about this charge, Palmer said that the large amount was intended to pay Medallion for various charges that had been accumulating throughout the year. Kroger asked Palmer to provide documentation to support this additional payment. Palmer was ultimately unable to provide acceptable documentation to support the charge. Palmer later acknowledged that he had not received such documentation from Medallion prior to his approving the payment.

16. Upon review, Kroger discovered that, contrary to Palmer's explanation, Medallion had billed and been paid for accessorials four times in the past 12 months. Kroger also discovered that Medallion had been paid in full for all freight charges at the rates quoted by Medallion and accepted by Kroger pursuant to the parties' Agreement.

17. As a result, Kroger withheld the $1.5 million payment to Medallion.

18. Around this same time, Kroger also learned that Palmer had approved 275 payments to Medallion for February 2022 alone. Seventy of those payments were for $999.99 and 138 were for $1,000. Palmer admitted that he did not require backup documentation for charges under $1,000 from Medallion, even though it was contrary to SOP.

19. Upon further investigation, Kroger discovered that Palmer had improperly approved freight charges in excess of the agreed-upon contractual rates, resulting in an overpayment to Medallion of approximately $1 million. Not only did this run afoul of the Agreement, but Medallion failed to provide documentation of the increased linehaul costs to support the excess freight charges, even if it was entitled to them (which it was not under the Agreement).

20. In early June 2023, Medallion's manager for the Kroger account acknowledged that Medallion had not been compliant with Kroger's billing procedures and that Medallion's outstanding charges to Kroger were subject to denial without proper authorization. Medallion further acknowledged its willingness to accept 100% of the losses it incurred.

21. Kroger terminated Palmer for the above-referenced misconduct in late June 2023.

**Payment Dispute**

22. In July 2023, Medallion demanded that Kroger pay $3.86 million in outstanding invoices for various charges related to Medallion's services to Kroger, despite acknowledging a month earlier that it was not entitled to payment on those unauthorized invoices.

23. Kroger requested that Medallion provide documentation to support this large demand, both as a precaution taken in consideration of Palmer's misconduct and as required by the Agreement.

24. Medallion eventually provided documentation supporting the validity of $350,000 worth of accessorial charges, which Kroger promptly paid. However, Medallion was unable to provide documentation supporting the remaining balance it alleged that Kroger owed. Instead, Medallion maintained that these additional charges accounted for general increased costs of doing business resulting from the COVID-19 pandemic.

25. Because Medallion failed to provide the required supporting documentation, Kroger refused to pay.

26. The parties thereafter unsuccessfully attempted to resolve their dispute.

27. On December 9, 2024, Medallion filed a demand for arbitration with the American Arbitration Association ("AAA") against Kroger for the nonpayment ("Demand"). A true and accurate copy of the Demand is attached as **Exhibit C**.

28. In the Demand, Medallion maintained that its claim against Kroger was valued at $3.1 million, based on the total of the unpaid invoices underlying its claim.

29. In February 2025, the arbitration was held in abeyance pending the parties' agreement to mediate the dispute. The parties participated in a mediation on April 24, 2025, but were unable to reach a resolution. On April 28, 2025, Medallion notified AAA of the unsuccessful mediation outcome and expressed its desire to proceed with the arbitration.

30. On May 1, 2025, in accordance with Section 12.5 of the Agreement, Kroger submitted a Notice of Opt-Out ("Notice") to AAA, advising that it was opting out of arbitration and would instead proceed with resolving this dispute in federal court. A true and accurate copy of the Notice is attached as **Exhibit D**.

31. Following Kroger's Notice to AAA, Medallion notified AAA that it was reducing the value of its claim to $2.9 million in an obvious (but futile) attempt to circumvent litigation of this dispute in federal court.

32. Disregarding Kroger's Notice, Medallion now attempts to proceed with arbitration, which has a status conference set for June 4, 2025.

## COUNT ONE
## DECLARATORY JUDGMENT

33. Kroger restates and realleges the foregoing paragraphs as if fully restated herein.

34. There exists a justiciable and triable dispute and controversy between the parties, which is ripe for adjudication.

35. Medallion filed its Demand against Kroger related to the Agreement.

36. In the Demand, Medallion maintains that its damages are valued at $3.1 million.

37. In response, Kroger filed its Notice to proceed with Medallion's claim in federal court.

38. Medallion ignored Kroger's Notice and attempts to continue arbitration.

39. Kroger is entitled to declaratory judgment that, under the Agreement, Medallion's claim against Kroger is no longer subject to arbitration and should instead proceed in this Court.

## COUNT TWO
## BREACH OF CONTRACT

40. Kroger restates and realleges the foregoing paragraphs as if fully stated herein.

41. Kroger and Medallion entered into a valid and binding Agreement for Medallion's services.

42. Among other things, the Agreement required Medallion to charge Kroger for freight charges at their originally quoted rates and for additional accessorial fees, so long as Medallion provided proper documentation of the latter.

43. Unbeknownst to Kroger, Medallion charged Kroger for various charges that were neither contained within the original quoted price nor identified as accessorial fees supported by sufficient documentation.

44. Kroger fully performed under the Agreement by paying Medallion.

45. Medallion materially breached the Agreement when it charged Kroger for amounts not permitted by the Agreement.

46. Kroger has been damaged by the breach in an amount to be proven at trial, but which exceeds $75,000.

## COUNT THREE
## UNJUST ENRICHMENT

47. Kroger restates and realleges the foregoing paragraphs as if fully stated herein.

48. When Kroger overpaid Medallion for the excess freight charges that were improperly billed by Medallion, Kroger conferred a benefit upon Medallion.

49. It is unjust for Medallion to retain the benefit of the overpayments Kroger made for the charges that were not permitted under the Agreement.

50. As a result of Medallion's actions, Kroger has been damaged in an amount to be proven at trial, but which is believed to be approximately $1 million.

**WHEREFORE**, Kroger respectfully requests that this Court:

A. Preliminarily and permanently enjoin the arbitration between Kroger and Medallion;

  B. Declare that, under the Agreement, Medallion's claim against Kroger is no longer subject to arbitration and, pursuant to the Agreement and Kroger's Notice, must proceed in this Court;

  C. Award judgment in favor of Kroger and against Medallion on Counts II and III;

  D. Award Kroger damages in an amount to be determined, but no less than $75,000;

  E. Award Kroger pre- and post-judgment interest as allowed by law;

  F. Award Kroger reasonable attorneys' fees and court costs incurred in bringing this action; and

  G. Award such other and further relief which the Court deems just and proper.

      Respectfully Submitted,

      /s/ *Ali Razzaghi*
      Ali Razzaghi (0080927)
      Ariel M. Fox (0100904)
      FROST BROWN TODD LLP
      301 E. Fourth Street, Suite 3300
      Cincinnati, Ohio 45202
      Tel: (513) 651-6800
      Fax: (513) 651-6981
      arazzaghi@fbtlaw.com
      afox@fbtlaw.com

      *Attorneys for Plaintiff The Kroger Co.*

## VERIFICATION

STATE OF TENNESSEE )
) ss:
COUNTY OF DAVIDSON )

I, Michael D. Cole, Senior Manager Inbound Transportation of Plaintiff The Kroger Co. ("Kroger"), verify that I am the duly authorized representative of Kroger, that I am personally aware of the facts related to this matter or the facts have otherwise been made known to me, and that the factual allegations in this Verified Complaint are true and correct to the best of my knowledge, information, and belief.

_____

Subscribed and sworn by *Nancy L. Card* before me, a Notary Public, on this 3rd day of June, 2025.

*Nancy L Card*
Notary Public STATE OF TENNESSEE
COMMISSION EXPIRES
JUNE 29, 2027

