**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

THE KROGER CO.,

*Plaintiff*,

v.

MEDALLION TRANSPORT & LOGISTICS, LLC,

*Defendant*.

Case No. 1:25-cv-369

Judge Jeffery P. Hopkins

**OPINION AND ORDER**

This contract action presents an exceptionally difficult question related to whether a dispute between The Kroger Company ("Plaintiff" or "Kroger") and Medallion Transport & Logistics, LLC ("Defendant" or "Medallion") must be adjudicated before an arbitrator or in federal court. Ordinarily, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). But what happens when the dispute concerns a party opting out of arbitration under an agreement and the other party's attempts to bring the case back within the universe of arbitration? That is the issue for this Court to decide today. For the reasons discussed below, the Court **DENIES** Medallion's Motion to Dismiss and to Compel Arbitration (Doc. 11) and **GRANTS** Kroger's Motion for Preliminary Injunction (Doc. 3).

## I. FACTUAL BACKGROUND

Several years ago, Kroger, a major Cincinnati-based food and drug retailer, entered into a Non-Dedicated Contract Carrier Transportation Agreement (the "Agreement") with Medallion, a freight broker that contracts with carriers to offer transportation services to its

customers. Compl., Doc. 1, ¶¶ 6–8. Under that Agreement, Medallion agreed to provide Kroger with brokerage services to transport groceries and other consumer packaged goods. *Id.* ¶ 8. The Agreement generally required the parties to arbitrate disputes arising from this contractual arrangement. *Id.* ¶ 12; Pl. Ex. A, Doc. 1-1, PageID 18. Section 12.5 of the Agreement, however, allowed either party to opt out of arbitration and proceed in the United States District Court in Cincinnati, Hamilton County, Ohio, when alleged damages equaled or exceeded $3 million, exclusive of interest and costs. *Id.* ¶ 12; Pl. Ex. A, Doc. 1-1, PageID 19; Pl. Ex. D, Doc. 1-4, PageID 53.

After a dispute related to the parties' business arrangement arose, Medallion filed a demand for arbitration under the Agreement with the American Arbitration Association ("AAA").[1] *Id.* ¶¶ 22, 27. In its demand, Medallion valued its claim at $3.1 million. *Id.* ¶ 28. Initially, however, the parties attempted to mediate the dispute, so arbitration was placed in abeyance in February 2025. *Id.* ¶ 29. The parties mediated on April 24, 2025, but did not reach settlement. *Id.* On April 28, 2025, Medallion notified AAA that mediation had failed and that it wished to proceed with arbitration. *Id.* On May 1, 2025, Kroger submitted a Notice of Opt-Out (the "Opt-Out Notice") to AAA, electing instead, under Section 12.5 of the parties' Agreement, to opt out of arbitration and resolve the dispute in federal court. *Id.* ¶ 30. To avoid federal court, Medallion notified AAA that it was reducing the value of its claim to $2.9 million, just under the opt-out threshold, while continuing to seek arbitration notwithstanding Kroger's Opt-Out Notice. *Id.* ¶ 31. Kroger sued in response, asserting three claims against

[1] The circumstances of the underlying dispute are not germane to the issues presented at this stage and are omitted for sake of brevity.

Medallion in its Complaint: (1) declaratory judgment, (2) breach of contract, and (3) unjust enrichment. *Id.* ¶¶ 33–50.

On the same date as filing its Complaint, Kroger filed a Motion for Preliminary Injunction (Doc. 3). In that motion, Kroger seeks to enjoin Medallion from proceeding with arbitration. In response, Medallion filed a Motion to Dismiss and to Compel Arbitration (Doc. 11). Kroger and Medallion have filed responses and replies. *See* Docs. 10, 12, 13, 17. Additionally, at the Court's request, following an informal preliminary conference under S.D. Ohio Civ. R. 65.1(a), the parties submitted supplemental cross-briefing and responses to address four issues relevant to the dispute:

1. Whether this Court or the American Arbitration Association ("AAA") should determine the arbitrability of this dispute.
2. Whether, under Section 12.5 of the Parties' Agreement, a party is permitted to amend its claim after a party has opted out of arbitration.
3. Whether an arbitrator can award a claimant more than the amount sought in the claimant's arbitration demand.
4. Whether judicial estoppel precludes an award in excess of the amended demand.

Docs. 14, 18, 19, 20, 21. Both Kroger and Medallion's motions are ripe. The Court will now consider these motions together alongside the parties' supplemental briefing.

## II. LAW AND ANALYSIS

The Federal Arbitration Act's ("FAA") "principal purpose" is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original) (quoting *Volt Info. Scis. Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). In most cases, "[b]efore compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that

agreement." *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008) (citation omitted). Typically, in deciding a motion to compel arbitration, "courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Hutzell v. Power Home Solar, LLC*, 734 F. Supp. 3d 761, 765 (S.D. Ohio 2024) (quoting *Jones v. U-haul Co. of Mass. & Ohio, Inc.*, 16 F. Supp. 3d 922, 930 (S.D. Ohio 2014)).

Here, the parties do not dispute that a valid agreement to arbitrate exists, nor that the underlying contract dispute falls within the substantive scope of the agreement. Doc. 11, PageID 143; Doc. 13, PageID 163. Rather, the dispute raises a question related to the applicability and effect of a contractual exception to arbitration—specifically, whether Kroger's asserted exercise of its contractual right under the opt-out provision rendered Medallion's claim no longer arbitrable and committed the dispute to federal court.

This question raises several threshold considerations. First, whether Kroger validly opted out of arbitration under Section 12.5. Second, if Kroger validly opted out, whether the Agreement removed the dispute from arbitration and requires it to proceed in federal court, notwithstanding Medallion's subsequent reduction of its claim for alleged damages. Third, whether the parties clearly and unmistakably delegated the first two questions to an arbitrator by their agreement to adhere to the Agreement's AAA-rule provisions. The third consideration governs the Court's authority to decide the preceding considerations; thus, that will serve as the starting point.

**A. Delegation**

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed

to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) (citation and quotations omitted). The parties disagree whether they delegated questions of arbitrability to the arbitrator.

The Sixth Circuit in *Blanton v. Domino's Pizza Franchising, LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases) addressed this issue. In that case, the Circuit held that "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Id*. For example, in *Blanton*, the arbitration agreement contained a provision that stated that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." *Id.* at 844–45. This mattered because the then-current AAA Rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 845. Ultimately, the Circuit found that the provision was "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Id.* at 845–52. Placing the issue in context, the Sixth Circuit explained: "It's not about the *merits* of the case. It's not even about *whether* the parties have to arbitrate the merits. Instead, it's about *who should decide* whether the parties have to arbitrate the merits." *Id.* at 852.

Acknowledging the controlling law under *Blanton*, Kroger and Medallion dispute whether their Agreement contains "clear and unmistakable" evidence that the parties intended to delegate questions of arbitrability to an arbitrator. Two sections of the Agreement seem to be most pertinent here: Section 12.1 and Section 12.2. Pl. Ex. A, Doc. 1-1, PageID 18–19. Kroger contends that this case is distinguishable from *Blanton* because of the

conditional language set forth in Section 12.2. Doc. 20, PageID 211. Section 12.2 of the Agreement states, in relevant part:

> All arbitrations will be conducted in accordance with such rules as may be agreed upon by the parties or failing agreement within thirty (30) days after arbitration is demanded, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA").

Pl. Ex. A, Doc. 1-1, PageID 19.

Kroger asserts this quoted language from Section 12.2 of the Agreement serves as a "far cry from the type of explicit, unconditional incorporation that the Court in *Blanton* found to be clear and unmistakable evidence to delegate arbitrability to an arbitrator," because it affords the parties discretion to decide which rules apply. Doc. 18, PageID 189 (citing *Blanton*, 962 F.3d at 845). Medallion's response is silent on this point, and Kroger's argument has merit. Section 12.2 is not "clear and unmistakable evidence" that the parties intended to delegate arbitrability because the language reflects that arbitration will be conducted under "such rules as may be agreed upon by the parties," and only absent agreement within thirty days, would the Commercial Arbitration Rules conclusively apply. Pl. Ex. A, Doc. 1-1, PageID 19. Though the facts suggest that Kroger and Medallion did not reach an agreement within the specified period, those facts are immaterial because the inquiry under *Blanton* is concerned with the language in the Agreement, not how the parties have operated under the Agreement's terms.[2] Peering at the conditional language of Section 12.2, one cannot say with certainty that there is "clear and unmistakable evidence" that Kroger and Medallion intended to delegate issues of arbitrability to the arbitrator.

---

[2] Kroger alleges that the parties have not discussed which rules would govern the arbitration. Doc. 20, PageID 212. But the time for doing so has long since passed. Medallion filed its demand for arbitration on December 9, 2024. Compl., Doc. 1, ¶ 27. Section 12.2 provides for a thirty-day window after that demand. *See* Pl. Ex. A, Doc. 1-1, PageID 19. Absent an agreement within that period, the Commercial Arbitration Rules would apply.

But that is not the end of the road. Medallion contends that language contained in another provision of the parties' Agreement, Section 12.1, does contain "clear and unmistakable" evidence of delegation of authority to decide arbitrability to the arbitrator. Doc. 19, PageID 200–02. Section 12.1 of the Agreement states in relevant part:

> Except as otherwise provided in this Agreement, any disagreement, dispute, controversy or claim with respect to the validity of this Agreement or arising out of this Agreement or a Shipper purchase order or any agreement in which either is incorporated, or breach hereof, shall be finally settled by arbitration in Cincinnati, Hamilton County, Ohio, USA or other location agreed upon by Shipper, in accordance with articles of the American Arbitration Association for Commercial Arbitration (or such other organization as may be mutually agreed upon by the parties).

Pl. Ex. A, Doc. 1-1, PageID 18.

At its core, this language is no different than Section 12.2. It provides that arbitration shall proceed "in accordance with articles of the American Arbitration Association for Commercial Arbitration (*or* such other organization as may be mutually agreed upon by the parties)." *Id.* (emphasis added). We are again left with a situation where Kroger and Medallion, if mutually agreed upon, could elect to proceed under the articles of a different organization. There is no sign that they did so here, but it is not proper for the Court to consider that factual question at this stage. In deciding whether the parties delegated arbitrability, the terms of the Agreement control. *Manlove v. Volkswagen Aktiengesellschaft*, No. 1:18-cv-145, 2019 WL 2291890, at *2 (E.D. Tenn. Jan. 11, 2019) ("When a delegation clause is included in an arbitration agreement, courts use the principles of contract interpretation to determine what the parties agreed.").

In an effort to show that the parties delegated arbitrability to the arbitrator, Medallion compares the arbitration provision in this case to those at issue in several other cases. Doc. 21, PageID 225–26. Start with *Great Am. Ins. Co. v. Johnson Controls, Inc.*, No. 1:20-cv-96, 2020

WL 4569126, at *1–2 (S.D. Ohio Aug. 7, 2020). Medallion states that the following provision in *Great American*, which the district court found to be "clear and unmistakable" evidence of delegation under *Blanton*, is "strikingly similar" to Section 12.1:

> All disputes not settled by negotiation or mediation . . . shall be submitted to arbitration in accordance with the prevailing Construction Industry Rules of the [AAA], except as modified in this paragraph . . .

*Id.* at *1–2 (emphasis omitted). Though similar, this is not similar enough. In contrast to *Great American*, Section 12.1 contemplates the AAA for Commercial Arbitration only as one option, permitting the parties instead to mutually agree upon another arbitral organization.

Turn then to *Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co.*, 590 F. App'x 482, 484 (6th Cir. 2014). Medallion refers the Court to a portion of the arbitration provision in *Milan Express* that incorporated the "provisions" of the AAA: "Any dispute or controversy that is not resolved informally . . . shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association." *Id*. But Medallion's analogy to *Milan Express* is incomplete. Unlike the provision there, the Agreement does not unconditionally adopt the AAA and its rules and procedures; instead, it reserves the parties' ability to select an alternative arbitral organization under Section 12.1, and separately, alternative rules, in Section 12.2. Pl. Ex. A, Doc. 1-1, PageID 18–19. The qualified reference in Section 12.1 is thus readily distinguishable from the *unqualified* adoption of AAA and its rules and procedures in *Milan Express*.

Medallion does not cite *Milan Express* for its primary holding, but it is also worth acknowledging. In the underlying dispute, the plaintiff in *Milan Express* asserted that the arbitration agreement was unenforceable and the defendant countered that the parties had delegated issues related to enforceability to the arbitrator. *Milan Express*, 590 F. App'x at 483.

Independent of incorporation of the provisions of AAA, the Sixth Circuit determined, in a case that pre-dates *Blanton*, that "enforceability [was] a question that the parties expressly agreed to submit to arbitration." *Id.* at 486. Indeed, the agreement expressly subjected to arbitration disputes regarding "enforceability." *Id.* at 484. Further, the comprehensive arbitration agreement in *Milan Express* submitted—without exception—all disputes *exclusively* to arbitration. *Id.* By contrast here, Section 12.1 expressly yields to provisions "otherwise provided in this Agreement," and Section 12.5 creates a right for either party to opt out of "the requirement to arbitrate" and proceed in federal court based on a damages threshold. Pl. Ex. A, Doc. 1-1, PageID 18–19.

Thus, reading Section 12.1 and Section 12.5 together, the Agreement provides that any disagreement, dispute, controversy or claim arising out of the Agreement shall be finally settled by arbitration except in cases where the alleged damages equal or exceed $3 million and a party has opted out of the requirement to arbitrate.[3] *Id.* Perhaps this distinction is why Medallion makes no attempt to rely on *Milan Express* for its primary holding, citing only "in relevant part" to the portion of that agreement that incorporated the provisions of AAA. Doc. 19, PageID 201. Whether the provisions in this case clearly and unmistakably delegate this dispute is a contract-specific question that the Sixth Circuit did not address. Thus, *Milan Express* does not control the outcome here.

[3] The exception language could reasonably be construed as a "carve-out," and the Sixth Circuit discussed that concept in *Blanton*. But the *Blanton* court did so only in relation to arbitration provisions that incorporate the AAA Rules: "It's true that some courts have read similar provisions more narrowly when an arbitration agreement carves out certain claims from the very provision that incorporates the AAA Rules . . . But to the extent that [the plaintiff's] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules." *Blanton*, 962 F.3d at 847–48. But here, *Blanton* does not control because the Agreement does not exclusively incorporate the AAA Rules. And it is not readily apparent that this concept articulated in *Blanton* would extend to agreements like the one at issue in this case. Nonetheless, neither party briefed the Court on this issue, let alone raised it in the manner contemplated in *Blanton.* The Court declines to reach it sua sponte.

Having considered Kroger and Medallion's competing arguments related to Section 12.1 and Section 12.2, the Court finds that there is no "clear and unmistakable" evidence in the Agreement that the parties delegated the question of arbitrability to the arbitrator when the dispute centers on an issue like invocation of the Section 12.5 opt-out provision. *Henry Schein*, 586 U.S. at 72 ("[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" (quoting *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations omitted)). Thus, the task falls upon this Court to decide whether this dispute is arbitrable under the Agreement.

**B. Arbitrability**

That brings us next to the question related to arbitrability. "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). At its core, arbitrability comes down to whether Kroger timely and validly exercised a contractual right to exclude this dispute from arbitration when the Agreement's stated condition—alleged damages equal to or in excess of $3 million dollars—was satisfied. Like all of the questions here, this question invokes several key considerations: (1) whether Section 12.5 establishes a right to opt out of arbitration; (2) whether Kroger properly exercised that contractual right to opt out of arbitration based on Medallion's original arbitration demand in excess of $3 million; (3) whether Kroger forfeited its right to opt out; and (4) whether Medallion's subsequent lowering of its demand for damages in excess of $3 million nullified Kroger's prior exercise of its contractual right.

**1. Section 12.5 establishes a contractual right to opt out of the arbitration requirement and Kroger properly exercised that right.**

Both Kroger and Medallion concede that the Agreement permits either party to opt of the requirement to arbitrate under Section 12.5. That section provides:

> In cases where the alleged damages equal or exceed three million dollars (exclusive of interest and costs) either party may opt out of the requirement to arbitrate the dispute and proceed with action in U.S. Federal District Court in Cincinnati, Hamilton County, Ohio, which shall be the exclusive venue for such opt-out cases, and the opt-out cases shall be governed by the substantive laws of the State of Ohio, without regard to conflicts-of-law rules. The parties knowingly and voluntarily waive their rights to a jury. Except in a case of gross negligence and/or willful misconduct, neither party shall be entitled to recover any indirect, incidental, special, consequential, exemplary, punitive or reliance damages (including, without limitation, lost or anticipated revenues, lost business opportunities or lost sales or profits, whether or not either party has been advised of the likelihood of such damages) or for attorney's fees. Each party shall bear its own attorney's fees and costs.

Pl. Ex. A, Doc. 1-1, PageID 19. Importantly, neither party disputes the validity of Section 12.5 of the Agreement and its enforceability. Thus, Section 12.5 establishes a contractual right to opt out of arbitration, and that either Kroger or Medallion, may exercise that right.

Kroger properly exercised that right after Medallion made a demand for $3.1 million. Compl., Doc. 1, ¶¶ 28, 30. In accordance with Section 12.5, Kroger submitted its Opt-Out Notice advising AAA that Kroger was opting out of arbitration under Section 12.5, and at the same time informed Medallion of its intention to proceed in federal court. *Id.*; Pl. Ex. C, Doc. 1-3, PageID 50; Pl. Ex. D, Doc. 1-4, PageID 53. There is no dispute that, at the time Kroger exercised that right, the alleged damages exceeded $3 million. As a result, Kroger was permitted to opt out at that time.

**2. Kroger did not forfeit its right to opt out of arbitration.**

Although there is no dispute that Kroger opted out when Medallion's demand exceeded $3 million, Medallion suggests that Kroger's prior conduct ran contrary to its later

decision to opt out. Medallion indicates "Kroger previously made written representations to Medallion about its willingness to participate in arbitration, participated in a pre-arbitration mediation as required by Section 12.2 of the Agreement, exchanged emails with the arbitration administrator, and was on a conference call with one of Medallion's attorneys and the arbitration administrator the day after Kroger filed its Complaint." Doc. 11, PageID 144. Kroger, on the other hand, contends that it was not required to opt out before a certain time.

This is ultimately an issue of contract interpretation governed by Ohio law under the provisions of the Agreement. Doc. 1-1. Under Ohio law, "contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 247 (1974). The Agreement did not address when a party was required to opt out. But the fact that the Agreement was "silent on [this] particular point does not make it ambiguous." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 764 (6th Cir. 2008) (quoting *Statler Arms, Inc. v. APCOA, Inc.*, 700 N.E.2d 415, 421 (C.P. 1997)). Generally, "silence on a particular point . . . is evidence of an intention of the parties to exclude this item from the contract, . . . rather than evidence of an intention to include it." *Id.*

So it would seem that Kroger and Medallion intended to not place a deadline on the opt out requirement. This conclusion is supported by other arbitration provisions in the Agreement that do establish specific deadlines. For example, in Section 12.2, the Agreement establishes a timeline for several key events: how long the parties have to agree to a mediator; how long after the dispute notice the parties have to mediate; how long after the dispute notice the parties have until they are subject to binding arbitration; how soon arbitration will commence after termination of mediation, or absent mediation, how long after issuance of

the dispute notice; and how long the parties have to decide which rules apply to arbitration. Pl. Ex. A, Doc. 1-1, PageID 18–19. Based on the terms of the Agreement, the Court cannot find that Kroger forfeited its right to opt out based on its conduct since the Agreement did not provide a deadline for when a party was required to opt out of arbitration. Further, Kroger exercised its right to opt out before binding arbitration actually began under the Agreement.

**3. Medallion's reduced damage demand did not nullify Kroger's exercise of its contractual right to opt out of arbitration.**

Having decided that Kroger properly opted out of arbitration at the time Medallion's demand exceeded $3 million, the Court is left to decide whether Medallion's subsequent reduction of that demand renders the dispute subject to arbitration. Medallion argues that "there are no words written anywhere" in the Agreement that prevents it from "limiting its damages to pursue its claims in arbitration." Doc. 11, PageID 146. This is correct. Medallion is also correct that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med Life Ins. Co.*, 31 Ohio St.3d 130, 131 (1987). But here, the plain language of the Agreement does not establish that the parties intended for one party to be able to unilaterally reduce its alleged damages *after* the other party had already validly exercised its right to opt out of arbitration under the Agreement's terms.

The language in Section 12.5 contains an express provision excluding a particular grievance from arbitration: in cases where a party elects to opt out of the requirement to arbitrate when the alleged damages equal or exceed $3 million. *United Steelworkers of Am. v. Mead Corp.*, *Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) ("[I]n cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can

prevail.'"). The language in that section also provides that a designated federal court, here, the "U.S. Federal District Court in Cincinnati, Hamilton County, Ohio," under Section 12.5, "shall be the *exclusive* venue for such opt-out cases." Pl. Ex. A, Doc. 1-1, PageID 19 (emphasis added).

Contrary to Medallion's position, this language "is not susceptible of an interpretation that covers the asserted dispute." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010). The Agreement's plain language does not provide that a subsequent reduction of the alleged damages by one party to the Agreement somehow restores the parties to the status quo *ante* and revives mandatory arbitration *after* the designated federal court has been deemed the "exclusive venue" for the dispute. Likewise, the language does not provide that either party can reduce its alleged damages to render the dispute arbitrable *after* a party has validly exercised its contractual right to opt out of arbitration. And finally, nothing in the Agreement's plain language makes a party's exercise of the Section 12.5 opt-out right provisional or permits the other party to nullify that election through subsequent conduct.

The Court need not decide whether, or under what circumstances, the Agreement permits a party to amend the damages alleged in its demand. The narrower question presented in the instant proceeding is whether a post-election amendment may defeat an opt-out properly exercised under Section 12.5. The plain language of the Agreement does not provide for that result. In accordance with Ohio law, "[c]ontracts must be interpreted in a way that renders all provisions meaningful and not mere surplusage." *Tenable Protective Servs. v. Cath. Charities HHS*, 2006-Ohio-1737, ¶ 25 (8th Dist.). Moreover, "[w]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by

finding an intent not expressed in the clear language employed by the parties." *Savedoff*, 524 F.3d at 763 (quoting *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246 (1978)).

Construing the opt-out provision in the manner advanced by Medallion would convert Kroger's vested contractual election into a contractual right controlled by Medallion and would deprive the opt-out provision of meaningful effect. Further, an interpretation that permits Medallion to reduce its alleged damages to $2.9 million, in a manner that is clearly aimed at depriving Kroger of its previously exercised contractual election, runs contrary to the parties' intent and the plain language of the Agreement that states that either party may opt out of arbitration when damages equal or exceed $3 million. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, . . . [the Court] [will] not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.") (citations omitted).

Thus, Medallion's subsequent demand did not nullify Kroger's prior exercise of its contractual right. Because Kroger opted out of arbitration under Section 12.5, Medallion's Motion to Dismiss and to Compel Arbitration (Doc. 11) must be **DENIED**.

### C. Injunctive Relief

The Court now turns to whether Kroger has satisfied the requirements for a preliminary injunction. A preliminary injunction is an "extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (cleaned up and citation omitted). The burden is on the party seeking the preliminary injunction to justify such relief. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). To that end, district courts

must consider four factors when presented with a request for a preliminary injunction: (1) the plaintiff's likelihood of success on the merits; (2) the risk of irreparable harm to the plaintiff absent an injunction; (3) the risk that an injunction will substantially harm others; and (4) the broader public interest that would be served by an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017). These four factors are not "prerequisites to be met." *Great Lakes Brewing Co.*, 860 F.3d at 849. "[N]o one factor is controlling." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Additionally, as is the case here, where material facts are not in dispute, or disputed facts are not material to the preliminary injunction sought, a district court need not hold an evidentiary hearing. *Certified Restoration Dry Cleaning Network LLC v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) (citation omitted).

**1. Kroger has demonstrated a likelihood of success on the merits.**

Kroger asserts that it is likely to succeed on the merits of its declaratory judgment claim. Doc. 3, PageID 59. In that claim, Kroger seeks a declaration that this dispute is not subject to arbitration and must proceed in this Court. Compl., Doc. 1, ¶¶ 33–39. This Court has rejected Medallion's arguments to the contrary, that Medallion could reduce its demand to bring its claim back within the scope of mandatory arbitration. Doc. 10, PageID 89. As discussed above, Medallion's reduction of its alleged damages did not nullify Kroger's prior exercise of its contractual right to opt out of arbitration. Thus, the Court finds that Kroger has demonstrated a likelihood of success on its declaratory judgment claim.

**2. Kroger will suffer irreparable harm without an injunction.**

As to the next prong, Kroger contends that it will suffer irreparable harm if it must expend time and resources arbitrating a claim that is not arbitrable. Doc. 3, PageID 63 (citing

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003)). Medallion counters that Kroger has not shown irreparable harm because there is nothing unfair about being compelled to arbitrate "especially where one has contractually agreed to resolve disputes via arbitration." Doc. 10, PageID 86 (quoting *Pritchard v. Dent Wizard Int'l. Corp.*, 275 F. Supp. 2d 903, 919 (S.D. Ohio 2003)). While that may be true, "arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Loc. No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)); *see also Volt Info.*, 489 U.S. at 478 ("[T]he FAA does not require parties to arbitrate when they have not agreed to do so."). By its terms, the Agreement states that either party may elect to opt out of arbitration when alleged damages equal or exceed $3 million. Kroger properly did so here. Thus, the Court finds this factor favors Kroger because it would be irreparably harmed if it were forced to arbitrate where it timely and validly exercised its right to opt out of arbitration and proceed in federal court. *See, e.g.*, *CIG Asset Mgmt. v. Bircoll*, No. 13-cv-13213, 2013 WL 4084763, at *2 (E.D. Mich. Aug. 13, 2013) (collecting cases) ("Courts have found that the harm suffered by a party who is forced to arbitrate claims that it did not agree to arbitrate is per se irreparable.").

### 3. An injunction would not cause substantial harm to others and would serve the public interest.

Kroger argues that the final two factors weigh in its favor. The remaining factors require the Court to consider: (1) "whether the issuance of the injunction would cause substantial harm to others" and (2) "whether the public interest would be served by the issuance of the injunction." *Certified Restoration*, 511 F.3d at 550–51. As to harm to others, Medallion contends that neither Kroger nor Medallion is relevant to this consideration. Doc.

10, PageID 90. But that is not true. In considering harm to others, the Court considers whether and to what extent Medallion would be harmed if an injunction were issued and whether that harm would outweigh the harm to Kroger if an injunction were not issued. Medallion has not asserted that it will be harmed, and arbitration remains in its earliest stages. As Kroger has explained, arbitration "has been held in abeyance virtually the entire time it has been pending," no "meaningful activity . . . has taken place," and no panel of arbitrators have been selected. Doc. 3, PageID 64. Additionally, if enjoined, Medallion will be able to continue with its dispute against Kroger in this forum. Under these facts, the Court finds that the harm to Kroger outweighs any harm that Medallion would suffer if an injunction were issued.

The Court further finds that the public interest would be served by issuance of an injunction. "[F]orcing parties to arbitrate when they did not agree to arbitrate disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution." *CIG Asset*, 2013 WL 4084763, at *3 (quoting *Morgan Keegan & Co., Inc. v. Louise Silverman Tr.*, No. JFM-11-2533, 2012 WL 113400, at *6 (D. Md. Jan. 12, 2012)). Accordingly, based on the circumstances here, the final two factors favor Kroger.

## III. CONCLUSION

For the reasons above, the Court **DENIES** Medallion's Motion to Dismiss and to Compel Arbitration (Doc. 11), **GRANTS** Kroger's Motion for Preliminary Injunction (Doc. 3), and preliminarily **ENJOINS** Medallion from proceeding with this dispute in arbitration. The Court will set this matter for a Preliminary Pretrial Conference by separate entry.

**IT IS SO ORDERED.**

September 30, 2026

Jeffery P. Hopkins
United States District Judge